IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANK ONDRUSHEK

    Plaintiff,

    v.                                        Civil Action No. PX-16-3005

ALTEC INDUSTRIES, INC.

    Defendant.

******

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant's Motion to Exclude the expert testimony of Plaintiff's two liability experts, Nancy Grugle, Ph.D., and Dennis Eckstine, ECF No. 24. The issues are fully briefed and a hearing was held on November 28, 2017. For the reasons stated below, Defendant's Motion to Exclude is GRANTED in part and DENIED in part.

**I.    Background**

On June 27, 2013, Plaintiff Frank Ondrushek ("Ondrushek") was severely injured while operating an AA755 aerial lift truck manufactured by Defendant Altec Industries ("Altec"). Specifically, Ondrushek, seated in front of the truck's lower controls, was lowering the truck's bucket when he was hit by the bucket, fracturing several vertebrae in his spine. Ondrushek, claiming that the accident arose from Defendant's faulty design of the AA755, filed this suit in Prince George's County Circuit Court on June 27, 2016. Altec removed the action to this Court based on diversity jurisdiction on August 28, 2016. After the close of discovery, Altec moved to

strike Plaintiff's liability experts, Dr. Nancy Grugle and Mr. Dennis Eckstine. Plaintiff has opposed the motion. The Court addresses each expert in turn.

## II. Analysis

Because this action is properly before the Court on diversity jurisdiction, Maryland choice-of-law rules apply. *See Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) ("A federal court sitting in diversity must apply the choice-of-law rules from the forum state."). For causes of action sounding in tort, Maryland adheres to the *lex loci delicti* rule, applying the substantive law of the state in which the alleged tort took place. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744–45 (2000).

### A. Expert Testimony of Dennis Eckstine

Plaintiff offers Dennis Eckstine, a mechanical engineer, to opine that the location of the AA755's lower controls places the operator in a "pinch point" or crush area that poses an unnecessary risk of the bucket hitting the operator on its descent. Eckstine further opines that the lower controls could have been placed further away from the perch (the area where the bucket comes to a rest when lowered), at minimal cost and with no additional safety risks. Eckstine also notes that, as designed, the AA755 fails to warn the operator that it is not safe to be in the vicinity of the controls while the bucket is descending to the perch. Eckstine concludes that the placement and location of the aerial lift system and lower controls were the proximate cause of Plaintiff's injuries. Eckstine bases his opinions on his own experience in designing similar trucks, examination of the AA755, and comparing the placement of the lower controls to the control placement of other similar aerial lift trucks manufactured by Altec.

Altec does not quibble with Eckstine's qualifications as a mechanical engineer with extensive industry experience specific to aerial lift trucks. *Cf. Higginbotham v. KCS Intern. Inc.*,

2

85 Fed. Appx. 911 (4th Cir. 2004) (expert opinion on design defect excluded where expert has no training in relevant industry or experience in design or manufacturing specific product). Nor does Altec challenge the relevance of Eckstine's opinions. Rather, Altec challenges Eckstine's methodology in concluding that AA755 was flawed in its placement of the lower controls. Rule 702 of the Federal Rules of Evidence governs the analysis. The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Courts have distilled Rule 702's requirements into two crucial inquiries: whether the proposed expert's testimony is relevant and whether it is reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *U.S. v. Forest*, 429 F.3d 73, 80 (4th Cir. 2005); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999). The party offering the expert testimony bears the burden of establishing its admissibility by a preponderance of evidence. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). The expert testimony must be based on "specialized *knowledge* and not on belief or speculation, and inference must be derived using scientific or other valid methods." *Ogelsby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (emphasis in original). A court need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert [where there is] simply too great an analytical gap between the data and the opinion proffered." *Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 454 n.4 (4th Cir. 2010); *accord Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 1993) ("[The expert witness] testified to no customs

3

of the trade, referred to no literature in the field, and did not identify the reasonable expectations . . . we are unprepared to agree that 'it is so if an expert says it is so.'") (citation omitted). "Expert testimony rooted in subjective belief or unsupported speculation does not suffice." *Zuckerman v. Wal-Mart Stores E., L.P.*, 611 F. App'x 138, 138 (4th Cir. 2015) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)) (internal quotation marks omitted).

Courts retain "broad latitude" to determine reliability of an expert witness's testimony and "may consider one or more" of the factors articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Id.* at 590; *see also Kumho Tire*, 526 U.S. at 142. Ultimately, the Court, as gatekeeper, must ensure that "an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire*, 526 U.S. at 152. Reliability is "determined by the 'principles and methodology' employed by the expert," *Holesapple v. Barrett*, 5 Fed. App'x 177, 179 (4th Cir. 2001), and the Court may look for a discernible basis for the expert's opinion in a "government or industrywide standard" or regular practices in the industry. *Conrad v. CSX Transp., Inc.*, No. MJG-14-51, 2015 WL 3797873, at *5 (D. Md. June 17, 2015), *aff'd*, 633 Fed. App'x 134 (4th Cir. 2016).

Here, Eckstine has articulated a reasonable basis for his opinion regarding the AA755's dangerous placement of the lower controls. Well-versed in designing aerial lift trucks, Eckstine articulated specifically that the controls on this particular model place the operator at a crush point. Eckstine further opines that Altec knew the controls could have been moved further down the platform similar to other Altec lift trucks at little to no extra cost. That Eckstine's research includes Youtube videos and "other internet sources" related to other aerial lift trucks to inform his opinion does not mandate exclusion. Eckstine documented the specific aerial lift trucks that

4

he reviewed and about which Defendant asked no specific questions regarding sufficiency as comparators.[1] That such information was found on the internet does not render it *per se* unreliable, and Altec gives the Court no other reason to discount Eckstine's particular methodology.

Altec also argues that Eckstine's opinion must be excluded because Eckstine failed to "apply the same analytical rigor to his opinions . . . as he would in his profession." ECF No. 24 at 19. In support of this position, Altec notes that Eckstine failed inform OSHA or ANSI of the design defect or otherwise urge that the AA755 lift truck be recalled. *Id*. On this basis alone, and relying on *Cooper v. Smith & Nephew*, 259 F. 3d 194, 200 (4th Cir. 2001), Altec argues exclusion is mandated.

*Cooper*, however, compels no such result. There, the Fourth Circuit affirmed the exclusion of the plaintiff's expert orthopedic surgeon that using spine screws for fusion surgery violated the standard of care. The expert's opinion that the screws were inherently dangerous "amounted to a wholly conclusory finding based upon his subjective beliefs rather than any valid scientific method," in part because the expert's opinion "conflict[ed] with that of the FDA and the majority of his colleagues in the American Academy of Orthopedic Surgeons who believe that the use of spinal instrumentation, including the use of pedicle screws, is the standard of care in the profession." *Id.* In short, the expert in *Cooper* marshalled no reasoned basis to conclude that the use of the screws violated the standard of care. Here, by contrast, Eckstine supported his opinion not only through relying on his vast experience designing aerial lift trucks and working

---

[1] Altec argues in part that Eckstine's reference to the Youtube videos is an insufficient basis because Eckstine failed to establish whether the aerial lifts had comparable boom lengths. ECF No. 24 at 18. Altec misstates the record. Eckstine at deposition was asked a single question as to whether he remembered the specific boom lengths of the comparators, to which he candidly replied that he did not. Indeed, Defendant's own expert, Joshua Chard, Ph.D., similarly admits that he "[does not] recall the specific boom length of each individual boom." ECF No. 24, Ex. 9, at 115. Eckstine was asked nothing further about the significance of the boom lengths or whether his opinion accounted for any boom-length variability. On this record, exclusion of Eckstine's opinion is not warranted.

to promulgate relevant industry standards, but through comparing the AA755 lower control placement to other aerial lift trucks in the industry. That Eckstine did not urge the truck's recall may be worthy of cross examination at trial, but does not demonstrate that Eckstine's opinion is lacking in foundation.[2]

Altec further challenges Eckstine's opinion on proximate cause as unsound because Eckstine failed to investigate other alternative causes including Ondrushek's lack of specific training on the AA755 or his own operator error. Eckstine's deposition testimony is less than clear on this point. On the one hand, Eckstine plainly testified that he "disagrees" that the injury was caused by Ondrushek. Eckstine Dep. 141:9–12. Eckstine further explains that based on his review of the evidence, Ondrushek was using the lift device "consistent with the intended and/or advertised use," to include sitting directly in front of the controls as he operated them. *Id.* at 29:15–16. Accordingly, Eckstine's failure to interview eye witnesses may be a proper area for cross examination to explore the reliability of his opinion, but it does not warrant wholesale exclusion.

Similarly, with respect to Eckstine's consideration of Ondrushek's training to operate the AA755, Eckstine considered that Ondrushek was trained in operating aerial lift trucks, and that as an apprentice, he was being supervised by a foreman who instructed him to lower the bucket. Eckstine Dep. 43:14–19. Further, Eckstine noted that specific training on the AA755 would not have aided Ondrushek on his body placement when operating the lower controls because all training materials were silent in this regard. *Id.* at 139:1–140:2. Again, Eckstine's admission that Ondrushek should have received training specifically on operating the AA755 before operating the controls should, and surely will, be a topic of lively cross examination. On this

---

[2] The Court notes that Defendant never asked Eckstine *why* he did not inform OSHA or ANSI of the identified design defect, giving the Court no basis to infer that this failure undermines the validity of Eckstine's opinion sufficient to warrant exclusion.

record, however, the Court cannot find that Eckstine completely failed to consider the impact of Ondrushek's training on the incident itself. Defendant's motion to exclude Eckstine's opinions is therefore denied.

### B. Expert Testimony of Dr. Nancy Grugle

Dr. Nancy Grugle's opinion is a different matter. Plaintiff offers Dr. Grugle, a human factors expert, seemingly for three distinct purposes. First, as background, Dr. Grugle explains the concept of "hazard control hierarchy," a design methodology employed in the industry which prioritizes "design[ing] out the hazard" when feasible, then guarding against the hazard, and finally warning about any remaining risk of a hazard. Second, Dr. Grugle concurs with Eckstine's opinion on the AA755's design defect because the AA755 fails to accommodate the "95th percentile male operator to sit or stand in front of the controls and lower the platform without being in danger of being struck by the platform." Grugle Report at 5. (However, on this point, Dr. Grugle relies almost exclusively on the opinion of Eckstine as to why the AA755 as designed places the lower controls operator in the strike zone.) Third and finally, Dr. Grugle opines that Altec failed to provide adequate warning labels, contributing to the design defect and thus Andrushek's injuries.

Altec primarily challenges Dr. Grugle's opinion regarding inclusion of warning labels, noting that her opinion is devoid of any reliable data, basis, or methodology to explain why the AA755's existing warnings are inadequate and her proposed label is superior. The Court agrees.

It first bears noting that Dr. Grugle has no substantive training, education, or experience in manufacturing or designing aerial lift devices. Nor has she ever served or been asked to serve on the relevant industry standards organizations such as ANSI or OSHA. Dr. Grugle also conceded that she had not reviewed any of the industry standards for designing warning labels

7

for aerial lift trucks in relation to this case. Grugle Dep. 34:3–35:14. And apart from reviewing and relying upon Eckstine's expert report, Dr. Grugle did not consult any designers or manufacturers of aerial lift trucks. At best, therefore, Dr. Grugle's bona fides are limited to the processes employed in designing product warnings generally.

But Dr. Grugle's lack of experience designing lift trucks, while raising concern, does not in and itself compel exclusion. Rather, Dr. Grugle's opinions must be excluded because she provided no factual basis for why the existing warning labels that cautioned the operator to "never operate unit with personnel under the boom or load," were insufficient. *Id.* 37:20–38:10. Nor did she offer any facts, data, studies, testing, or support of any kind for why her proposed label was superior and would have prevented Ondrushek's injuries. In fact, Dr. Grugle admitted that her label, as designed, should accompany Eckstine's proposed new "safer alternative design," Grugle Report at 8, and would not be sufficient absent implementation of Eckstine's recommended design changes to the truck itself, *see* Grugle Dep. 78:15–79:6. Dr. Grugle, at base, cannot explain how her proposed label would have done anything to prevent Plaintiff's injury.

In this regard, Dr. Grugle's opinion in this case suffers from the same fatal flaw as in *Lackey v. Robert Bosch Tool Corporation*, Civ. No. 16-29-ART, 2017 WL 129891 (E.D. Ky. Jan 12, 2017). In *Lackey*, Dr. Grugle had opined that the existing warnings on a table saw were inadequate and that her proposed warnings would have rendered the tool safer. *Id.* at *5. However, as in this case, Dr. Grugle could not marshal any facts or data to support her position. *Id.* "Dr. Grugle reached her opinion in the following fashion: she bought a used SkilSaw, reviewed its manual, adjusted some of its parts, then designed a safety warning to fit the specific accident scenario" that had occurred. *Id.* at *6. She had not examined any other similar products'

8

labeling or conducted any market research whatsoever. *Id.* Consequently, "[b]ecause Lackey had not bridged the gap between Dr. Grugle's general knowledge and her specific conclusions," she was precluded from testifying about the products warning labels. *Id.* at *7.

Dr. Grugle's opinions similarly will be excluded here. Because Dr. Grugle has not provided any factual basis to undergird her opinions, she will not be permitted to testify as to her evaluation of the AA755's existing warning labels or her proposed alternative label. But, like in *Lackey*, Dr. Grugle will be permitted to explain to the jury generally how human factors principles inform product design and the design of safety warnings insofar as her opinions are grounded in "the principles of her profession, the supporting literature and her professional experience." *Id.* at *7. Dr. Grugle may possibly testify generally as to the 95th percentile male principle, however, the Court will defer final ruling on its relevance and applicability based on further *voir dire* at the time of trial, and if necessary, outside the presence of the jury.

### III. CONCLUSION

For the foregoing reasons, it is this 5th day of December, 2017, ORDERED that:

1. The Motion to Exclude filed by Defendant ALTEC INDUSTRIES (ECF No. 24) BE, and the same hereby IS, GRANTED in part and DENIED in part;

2. The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel for the parties.

| 12/5/2017 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |

9